Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7093 | **DATE** | 9/21/2004 |
| **CASE TITLE** | Lisa Ellis, et al. vs. Elgin Riverboat Resort, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant Elgin Riverboat Resort's motion for summary judgment [103-1] is granted and this case is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 2 2004 | |
| | Notified counsel by telephone. | | date docketed | 124 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 SEP 21 PM 4:17 | 9/21/2004 date mailed notice | |
| IS | courtroom deputy's initials | Date/time received in central Clerk's Office | IS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 22 2004

| | |
|---|---|
| LISA ELLIS, et al., | ) |
| Plaintiffs, | ) Case No. 98 C 7093 |
| v. | ) Magistrate Judge |
| | ) Martin C. Ashman |
| ELGIN RIVERBOAT RESORT, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Lisa Ellis and Marcia English filed a one-count employment discrimination complaint against Defendant, Elgin Riverboat Resort d/b/a Grand Victoria Riverboat; Nevada Landing Partnership and RBG, Ltd. (collectively, "Elgin"), alleging unlawful failure-to-hire under the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) (Title VII).[1] Elgin moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] Plaintiffs did not respond to Elgin's motion nor did they controvert Elgin's Local Rule 56.1 Statement of Undisputed Material Facts. In accordance with Local Rule 56.1(b)(3)(B), this Court deems all material facts set forth in Elgin's Statement of Undisputed Material Facts admitted by Ellis and English. For the following reasons, Elgin's motion is granted.

---

[1] Plaintiffs' amended complaint originally included Yvonne Mason and Derrick Denson as plaintiffs. Mason and Denson have since resolved their disputes with Elgin and they are no longer parties to this suit.

[2] The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. See 28 U.S.C. § 636(c); Local R. 73.1(a).

124

## I. Background

Elgin is a state-licensed gambling facility located in Elgin, Illinois. Elgin has approximately 1600 employees, of whom slightly under 400 are dealers. Elgin utilizes a standard employment application form for the dealer position. The application includes questions about the positions sought, shift preferred, educational background, prior employment, and questions bearing upon licensing criteria established by the Illinois Gaming Board. Nowhere on the application is there any reference to the race of the applicant. Completed applications are initially received and processed by one of Elgin's human resources clerks. After processing the application, the clerk forwards it to an assistant human resources manager, who performs the initial screening function.

During the period relevant to Plaintiffs' claims, Lennor Penson, an African-American, was the assistant human resources manager and conducted the initial screen. In conducting the initial screen, Penson would: determine if the application was complete; verify whether the applicant had any gaming experience; verify whether the applicant had worked for Elgin before (and, if so, why he left); and review the applicant's work history. Penson had full and final authority to reject an applicant based upon the results of her initial screen. During the period relevant to this lawsuit, Elgin threw out rejected applications after thirty days.

Applications that survive the initial screen are held until the casino manager, or someone from his staff, indicates that there are openings for dealers, at which point the applications are sent to the casino manager for further screening. Further screening generally consists of a very brief review of each candidate's casino experience and job stability. Candidates whose applications survive the casino manager's screen are scheduled for an audition with Elgin's Pit

Department. The auditions are held in Elgin's pavilion, a land-based structure through which patrons reach the riverboat casino when it is docked. The auditioning applicants are evaluated on: (1) knowledge of the game procedures and bet pay-offs; (2) proficiency and dexterity in dealing; (3) awareness of the game environment, including possible gaming irregularities; and (4) ability to relate to the customer and maintain a friendly and personable demeanor. The person conducting the audition determines who has passed and, at the time period relevant to the Plaintiffs' claims, had the final say on who would be given an offer of employment as a dealer. Applicants who pass the audition are offered employment contingent upon passing a drug test and criminal background check.

In August 1998, Lisa Ellis was seeking employment as a dealer with Elgin. Ellis had experience as a dealer but a turbulent work history. Ellis worked as a dealer for Elgin from October 1994 until March 1995. Before quitting that job for health reasons, Ellis received several weeks of dealer training. Ellis was rehired by Elgin on December 5, 1995, but she terminated her employment about a week later due to scheduling issues. From May 29, 1996, until September 3, 1996, Ellis worked for Majestic Star Casino in Gary, Indiana. While the events leading up to her departure are in doubt, as of September 3, 1996, Ellis was not eligible for rehire with Majestic Star. After Majestic Star, Ellis worked at Empress Casino in Hammond, Indiana from December 12, 1996, until June 14, 1997. Empress Casino's records suggest Ellis had attendance problems when she worked there. Ellis was hired by Hollywood Casino on September 8, 1997, but she terminated her employment on September 10, 1997, because of scheduling issues. After September 10, 1997, Ellis was not eligible for rehire with Hollywood

Casino. Finally, in June 1998, Ellis was employed by Trump Casino in Gary, Indiana, where she worked for approximately one month before resigning.

In August 1998, Marcia English was also seeking work as a dealer for Elgin. English worked as a full-time school teacher since September 1972 but had experience as a casino dealer as well. From May 1996 until November 1998, English worked as a dealer for Majestic Star Casino in Gary, Indiana.

While both Ellis and English submitted applications to Elgin, only English was invited to audition on August 12, 1998. In fact, on August 10, 1998, Ellis learned that her application had been rejected. Ellis claims that, despite the formal rejection, Elgin Pit Boss Kevin Schmieder encouraged her to attend the August 12 audition because the casino needed dealers. (Ellis Dep., 10/4/02, at 326-28.) So, on August 12, 1998, Ellis, English and English's friend, Yvonne Mason, went to Elgin to audition for jobs as dealers. Elgin permitted all three women to audition but told Ellis and Mason that they would audition last because they were the only candidates not on the schedule and that they would need to submit new application forms before Elgin would consider them for employment.

Ellis and English state that there were six other candidates auditioning for dealer positions on August 12, 1998. There are no records of who auditioned that day and the identities of the other candidates remain unknown. According to Ellis and English, the other candidates included one Asian woman, four Caucasian women and one Caucasian man. (Id. at 338-39.) Ellis and English claim that all of the Caucasian candidates auditioned together for about forty-five minutes while the rest waited in a separate room. (Id. at 343-44.) Ellis and English do not know what transpired during the auditions. (Id. at 342-44.) After the first group was finished, Ellis, English,

- 4 -

Mason and the Asian woman began their audition. Ellis and English claim that their audition was cut short when the persons conducting the audition indicated that they needed to leave early in order to be on the casino boat before it left the dock. (Id. at 350-53.) The Plaintiffs do not recall if the boat actually left the dock following their auditions. Elgin acknowledges that the Plaintiffs' audition may have been rushed because in 1998 dockside gambling was not permitted so the casino was required to leave the dock before gambling could begin. (Grainger Aff. ¶ 8.)

After the auditions, Ellis, English and Mason went to the Human Resources Department so that Ellis and Mason could submit dealer application forms. Ellis and English claim that they encountered the Caucasian candidates in the Human Resources Department and that the Caucasians were holding drug test forms. (Ellis Dep., 10/4/02, at 357-58, 376-77.) The fact that all of the Caucasians were in possession of these forms indicated to the Plaintiffs that the Caucasians had all been offered jobs after their audition. (Id. at 358.) A few days later, Ellis and English were informed by mail that their applications had been rejected.

Plaintiffs filed suit against Elgin for employment discrimination in November 1998 and amended that complaint in July 1999. Plaintiffs originally brought this suit as a class action. After receiving class certification, however, Plaintiffs' investigation and discovery efforts failed to produce sufficient evidence of a pattern or practice of racially discriminatory hiring as a standard operating procedure at Elgin and on August 22, 2003, this Court decertified Plaintiffs' class action.[3] Now before the Court is Elgin's motion for summary judgment. Plaintiffs have not responded to Elgin's motion nor have they controverted Elgin's Local Rule 56.1 Statement of Undisputed Material Facts. In accordance with Local Rule 56.1(b)(3)(B), "[a]ll material facts set

---

[3] Ellis v. Elgin Riverboat Resort, 217 F.R.D. 415 (N.D. Ill. 2003).

forth in the statement required of the moving party [Elgin] will be deemed to be admitted unless controverted by the statement of the opposing party."

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Sinkler v. Midwest Prop. Mgmt., Ltd.*, 209 F.3d 678, 683 (7th Cir. 2000). In determining whether summary judgment is appropriate, the Court must view the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). However, if the nonmovant bears the burden of proof on an issue he or she may not simply rest on the pleadings, but rather must affirmatively set forth specific facts establishing the existence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322-26.

Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. If taking the record in its entirety cannot lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial and summary judgment must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Ellis and English allege in their complaint that, in violation of Title VII, Elgin refused to hire them because they are African-Americans. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging employment discrimination under Title VII may either present direct evidence of discrimination or proceed under *McDonnell Douglas's* burden-shifting formula. Under the direct method, Ellis and England must present enough direct or circumstantial evidence of discriminatory motivation to create a genuine issue for trial. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th 2000). "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Id.* Where there is no direct evidence of discrimination, the plaintiff may proceed under the indirect burden-shifting formula established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden-shifting formula allows Ellis and English to establish a prima facie case of race discrimination when they show: (1) that they belong to a racial minority; (2) that they applied and were qualified for a job for which Elgin was seeking applicants; (3) that, despite their qualifications they were rejected; and (4) the position was given to someone of a different race who had similar or lesser qualifications. *Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000). If Ellis and English succeed in establishing a prima facie case, the burden of production shifts to Elgin to articulate a legitimate, nondiscriminatory reason for its action. *Id.* If Elgin satisfies its burden of production, Ellis and English must then establish that Elgin's nondiscriminatory explanations are mere pretext for discrimination. To do this, Ellis and English must show that either (1) it is more likely that a discriminatory reason motivated Elgin than the proffered nondiscriminatory reason or (2) that Elgin's explanation is not credible. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). "Pretext is more than a mistake on the part of the employer; it is a phony excuse." *Id.* Courts look to whether the employer gave an

honest explanation for its behavior and are not "super-personnel departments" that reexamine an entity's business decisions. *Id.* Finally, though the burden of production shifts, the burden of persuasion remains on Plaintiffs Ellis and English at all times. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

## II. Discussion

Neither Ellis nor English produce any direct evidence of discrimination against either of them so there can be no prima facie case of employment discrimination under the direct method. *Radue*, 219 F.3d at 616. Because they have no direct evidence, the Plaintiffs must show the four elements of *McDonnell Douglas's* indirect, burden-shifting method to establish their prima facie case of employment discrimination. Elements (1) and (3) of the burden-shifting formula are not in dispute as all parties agree that both Plaintiffs belong to a racial minority and that neither was hired for the dealer job. Elgin argues that neither Ellis nor English can establish element (2), that they were qualified for a job Elgin was seeking to fill, nor element (4), that the position was given to someone of a different race who had similar or lesser qualifications.

### A. Element (2)

In their complaint, Ellis and English claim that they were qualified for the jobs for which they applied and that at all times relevant each was well-trained, competent and experienced as a riverboat casino dealer. Elgin does not deny that Ellis and English both had relevant training and work experience.

1. <u>Ellis</u>

Elgin argues that Ellis was not qualified to work as a dealer in August 1998 because she was a former employee of the casino and because she had a poor work history. Ellis worked as a dealer for Elgin from October 1994 to March 1995. Elgin rehired Ellis in December 1995 but she left the job a few days later without giving proper notice. After leaving Elgin in 1995, Ellis worked for four different casinos in the next three years. Ellis did not hold any of the four casino jobs for more than six months and in August 1998 she was not eligible to be rehired at two of them.

A plaintiff's work history is relevant to her employment discrimination claim. In *Lee v. Nat'l Can Corp.*, the Seventh Circuit chastised a district court for glossing over a plaintiff's extended periods of unemployment, short-term jobs, and numerous firings, and suggested that a poor work history alone could be grounds for finding a plaintiff unqualified for a job. 699 F.2d 932, 936-37 (7th Cir. 1983). The Seventh Circuit explained that:

> "Title VII does not compel employers to hire unqualified applicants with questionable employment histories. The Supreme Court described the policy underpinnings of Title VII in *McDonnell Douglas Corp. v. Green*, noting that '[t]he broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions.'"

Id. at 937. Furthermore, in the refusal to rehire context, the Seventh Circuit recognizes that businesses must adjust to changes in the marketplace and "[t]he fact that an individual may have been qualified in the past does not mean that he is qualified at a later time." *Grohs v. Gold Bond Bldg. Prods.*, 859 F.2d 1283, 1287 (7th Cir. 1988).

As a general rule Elgin does not rehire dealers except where the dealer had a good excuse for leaving or when Elgin is desperate for dealers. (Grainger Dep. at 84-85.) Elgin also gives full weight to an applicant's work history and rejects applicants who cannot show a history of steady and satisfactory work, although exceptions are made when Elgin is desperate for dealers. (Id. at 91-92; Penson Dep. at 14.) Because of her poor work history in general and with Elgin in particular, Elgin claims that it would not rehire Ellis.

As noted, a poor work history does not always mean an applicant is unqualified to be an Elgin dealer. Unlike some of its hiring criteria (e.g., a successful audition), Elgin applies its no rehire rule and its job history rule less stringently when there is an extreme need for dealers. (Grainger Dep. at 84-85, 91-92.) In August 1998, Elgin may have had an extreme need for dealers. Ellis contends that on August 11, 1998, Pit Boss Kevin Schmieder encouraged her to attended the August 12, 1998, audition precisely because Elgin needed dealers. (Ellis Dep., 10/4/02, at 326-28.) Furthermore, despite her unscheduled arrival, Elgin auditioned Ellis on August 12, 1998. (Id. at 332.) The conversation with Pit Boss Schmieder and the audition are significant because normally it is Elgin's Pit Department that conducts the auditions and makes the final hiring decisions. (Grainger Aff. ¶ 6.) In Ellis's case, however, it appears that the August 12, 1998, audition was the first step in applying for a job, not the usual last step. Ellis admits that Schmieder may not have seen her application or known anything about her work history when he encouraged her to audition. (Ellis Dep., 10/4/02, at 328.) Ellis admits that after her audition she and Yvonne Mason (who had not yet applied to work for Elgin) were required to submit new application forms to Elgin's Human Resources Department. (Id. at 332.) Ellis does not deny that her new application would be reviewed by Elgin's Human Resources Department and by Elgin's casino manager.

According to the hiring criteria described by Elgin's Human Resources Department and casino manager, Ellis was not eligible for rehire. (Grainger Dep. at 48, 84-85; Penson Dep. at 29.) Finally, even if its hiring standards were more flexible in August 1998, Elgin had rejected Ellis as recently as August 10, 1998, just two days before her audition. (Ellis Dep., 10/4/02, at 316-17.) When viewed in a light most favorable to the nonmovant, it is not reasonable to infer that Elgin's flexibility with regard to work histories applied to Ellis's application in August 1998. Accordingly, Ellis cannot show that she was qualified for Elgin's dealer position and cannot establish the second element of her prima facie case.

2. English

Elgin argues that English was not qualified to work as a dealer in August 1998 because she was a frequent player at the casino and because she was seeking part-time work. As a general rule, Elgin does not hire its frequent players as dealers because they may have relationships with other patrons that will create conflicts of interest. And in August 1998 Elgin was not looking to hire any part-time employees so the job English sought did not exist. English admits that she gambled at Elgin's casino on as many as thirty occasions and had an Elgin card which could be used toward "comps" on other items. (English Dep., 8/18/99, at 77-78, 81-82.) English is also a full-time school teacher and cannot work any shift at a casino between the hours of 8:30 a.m. to 2:30 p.m. during the school year. (Id. at 19-20, 25.)

While English's status as a frequent player and full-time teacher undermines her employment discrimination claim, English's prima facie case simply vanishes as she admits that

she is unaware of Elgin's hiring criteria in August 1998. (English Dep., 10/15/02, at 246-47.) In *Bennett v. Roberts*, an African-American teacher claiming race discrimination in a failure-to-hire case could not establish a prima facie case of employment discrimination because she could not establish that she was qualified for the positions she sought. 295 F.3d 687, 696 (7th Cir. 2002). Though the African-American plaintiff had very strong teaching credentials, the Seventh Circuit found that "comparisons [to the white teachers who were hired] are meaningless absent some information concerning the hiring criteria for these positions." *Id.* As in *Bennett*, English simply has no basis for arguing that she was qualified to be a dealer for Elgin in August 1998 and she cannot establish the second prong of the *McDonnell Douglas* burden-shifting formula.

### B. Element (4)

Neither Plaintiff can establish the fourth prong of the burden-shifting formula because the identities of the Caucasian applicants are unknown. Element (4) of the burden-shifting formula requires that the position sought by the plaintiff was given to someone of a different race who had similar or lesser qualifications. Plaintiffs cannot show that the Caucasian applicants actually received jobs nor that the Caucasian applicants had similar or lesser qualifications.

Although neither the Plaintiffs nor the Defendant have any information about the Caucasian candidates, the Plaintiffs claim that the Caucasians were offered jobs on August 12, 1998. Ellis and English stated that, following the August 12 auditions, the Caucasian applicants in the Human Resources Department were holding drug test forms. (Ellis Dep., 10/4/02, at 357-58.) Because neither Plaintiff produces any evidence of the drug test forms nor any other evidence supporting

their claim that the Caucasians actually received jobs, they fail to present a genuine issue of material fact.

The Plaintiffs have no information on the qualifications of the Caucasian applicants. (Id. at 311, 376-77.) The Plaintiffs do not know the identities of the Caucasian applicants. (Id. at 376-77.) The Plaintiffs were not in the room when the Caucasians auditioned and have no basis for commenting on the Caucasians' performances. (Id. 342-44.) Unable to compare themselves to the Caucasian candidates, Ellis and English can only rely on speculation and assume that they were as qualified as anyone for the dealer jobs. This kind of speculation cannot create an issue of material fact. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (holding that, "plaintiff's contention that he is the better candidate for a vacancy constitutes nothing but the employee's own opinion . . . ."). The plaintiff alleging employment discrimination must have at least a logical reason to believe the employer would not have taken the same action if the employee was not a member of a protected minority group and everything else remained the same. *See Kelley v. Apollo Travel Servs. P'ship*, 2000 WL 1170074, at *9 (N.D. Ill. Aug. 16, 2000). Ellis and English simply do not have any evidence as to any wrongdoing. Where there is no evidence that the best candidate did not receive the job, a court will not assume wrongful conduct by the employer. Accordingly, Ellis and English fail to establish the fourth element of their prima facie claim of employment discrimination.

In the Seventh Circuit, "the prima facie case under *McDonnell Douglas* must be established and not merely incanted." *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178 (7th Cir. 1997). The Court finds that, after drawing all reasonable inferences in their favor, neither Ellis nor English presents sufficient evidence to create a genuine issue of material fact with regard to their prima

facie case of employment discrimination. Because the plaintiffs cannot establish a prima facie case summary judgment in favor of Elgin is appropriate.

### III. Conclusion

For the foregoing reasons, Elgin's motion for summary judgment is granted and this case is dismissed.

**ENTER ORDER:**

*[signature]*

**MARTIN C. ASHMAN**

Dated: September 21, 2004.  United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| CECILE SINGER, Esq. | JANE M. McFETRIDGE, Esq. |
| KENNETH N. FLAXMAN, Esq. | JOEL W. RICE, Esq. |
| 122 South Michigan Avenue | Fisher & Phillips, L.L.P. |
| Suite 1850 | 140 South Dearborn Street |
| Chicago, IL 60603 | 420 Marquette Building |
| | Chicago, IL 60603 |
| | |
| Attorneys for Plaintiffs | Attorneys for Defendants |